## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kendra M. Miller, being duly sworn, depose and state as follows:

1.  I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been employed by HSI since March 2021 and I am currently assigned to the Office of the Special Agent in Charge ("SAC") New England in Boston, Massachusetts.  I am assigned to the Child Exploitation and Forensics Group. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia where I received training to become a federal agent; specifically, I received a certification in the Criminal Investigator Training Program and the HSI Special Agent Training Program. As part of my duties, I am authorized to investigate violations of the laws of the United States, including criminal violations relating to child exploitation, child pornography, coercion and enticement, and transportation of minors, including but not limited to, violations of 18 U.S.C. §§ 2422, 2423, 2251, and 2252A.  I have conducted and participated in investigations of violations of these statutes.  I have also previously assisted in the execution of federal search warrants in connection with these investigations.  I have received training in the investigation of child pornography, child exploitation, and transportation of minors, and have had the opportunity to observe and review examples of child pornography as defined in 18 U.S.C. § 2256.

2.  This affidavit is submitted in support of an application for a criminal complaint charging Robert Miller ("MILLER"), year of birth 1964, of Beverly, Massachusetts, with a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography).

3.      The statements contained in this affidavit are based, in part, on information provided by other law enforcement officials; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; review of records; analysis by federal agents/analysts and computer forensics professionals; my review of records; and my experience, training and background as a Special Agent with HSI. Because this affidavit is being submitted for the limited purpose of establishing probable cause to secure a criminal complaint, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish the requisite probable cause.

## FEDERAL SEARCH WARRANTS

4.      HSI began an investigation into a secure online chat platform, hereinafter referred to as "Chat Application A."[1]  In review of Chat Application A's website[2] and other law enforcement resources, I have learned that Chat Application A is a communications-based platform available on the internet to users worldwide. Service is offered through a web-based application for Windows, Linux, and iOS operating systems, along with mobile applications available for Android, and iOS operating systems. Chat Application A's services include instant messaging, voice calls, video calls, and file sharing capabilities.

---

[1] Law enforcement knows the actual name of Chat Application A. However, the investigation into users of Chat Application A remains ongoing, and public disclosure of Chat Application A's actual name potentially would alert its members to the investigation and cause members to flee or destroy evidence. Accordingly, to preserve the confidentiality and integrity of the ongoing investigation, the actual name and other identifying details of Chat Application A remain undisclosed in this affidavit.

[2] I know that Chat Application A updates its website content and informational blog posts often, and the information set forth here is derived in part from information obtained from Chat Application A's website as of the date that this affidavit was drafted.

Chat Application A allows users to have personal, one-on-one chats, or to have larger scale group chats with other Chat Application A users.

5. All Chat Application A chats are protected by end-to-end encryption, meaning that only the sender and receiver(s) of a chat have access to the content, and nothing is stored on any servers once delivered. Prior to delivery of transmitted content, or if the recipient's phone is off, the content is encrypted and stored on Chat Application A's servers. If the sender of a message deletes his/her own message, he/she will have an option to delete the message from every recipient's device, which would result in the original picture, video, or text content no longer appearing on all recipients' devices.

6. Based on my training and experience, and training and experience of others I have spoken with, I know that Chat Application A often is used for, among other things, illegal activity, including access to, and the exchange of, child pornography, because of the high degree of anonymity that is offered to Chat Application A users.

7.  In January 2023, HSI Springfield, Illinois (hereinafter, "HSI Springfield") conducted a search warrant on the residence of a suspect (hereinafter referred to as "Person 1") who was a member of a large-scale group chat (hereinafter referred to as "Group Chat A") involving numerous individuals trading child pornography. The investigation identified a verified phone number xxx-xxx-3081 ("SUBJECT ACCOUNT") as a member in Group Chat A on Chat Application A, as outlined further in the affidavit in support of search warrant for MILLER and for MILLER's residence (attached hereto as SEALED EXHIBIT A and incorporated by reference).  *See* #23-mj-8115-PGL and 23-mj-8116-PGL.  The investigation confirmed that MILLER is the registered owner of that phone number. A review of MILLER's criminal record revealed that in September 2018, MILLER was

3

convicted of possession of child pornography out of Essex County Superior Court and received a three year probationary term.  I am aware that, because of that conviction, MILLER is required to register as a sex offender in Massachusetts.  According to the Massachusetts Sex Offender Registry Board, MILLER's registration includes his Beverly residence and the phone number associated with the SUBJECT ACCOUNT.

8.  Based on the investigation, on May 2, 2023, HSI obtained search warrants authorizing the search of MILLER and his residence for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A.  *See* # 23-mj-8115-PGL and 23-mj-8116-PGL.

9.  On May 3, 2023, at approximately 6:07 am, HSI agents, with the assistance of local law enforcement, executed the federal search warrants at the Beverly residence.  MILLER was present for the execution of the search warrant.  The layout of the residence consists of one bedroom, one bathroom and a small closet.

10.  During the search of MILLER's residence, agents located approximately 15 electronic devices from the residence.  Those devices included the following: one ASUS Laptop Model X555Q, one Maivo Firstsmart external hard drive, one Samsung Galaxy cellular device, and one Samsung tablet (collectively, the "SUBJECT DEVICES").  The SUBJECT DEVICES were seized pursuant to the search warrants.

11.  MILLER was informed by agents that he was not under arrest and could leave but that HSI had a search warrant for the residence and for his person.  Agents provided MILLER with his *Miranda* rights verbally, and in writing. MILLER refused to sign the *Miranda* rights and declined to speak with law enforcement officials.

12.  HSI Agents conducted a preliminary forensic examination of the ASUS Laptop Model X555Q, which was powered on but locked when it was discovered (hereinafter,

"SUBJECT DEVICE 1").  Per the label located on SUBJECT DEVICE 1, it was manufactured in China.  A review of the installed programs on SUBJECT DEVICE 1 revealed that the Telegram desktop application and Chat Application A were installed, as well as the MEGA and Veracrypt applications. Also, one file entitled "download.part 1" was located in the file path \Users\Rob.  This file was approximately 600 Gigabytes (GB) in size, and did not appear to have a common file extension to identify the type of file.  This file was unable to be opened during the initial analysis, and it appears to possibly be an encrypted volume.[3]

13.    Additionally, on SUBJECT DEVICE 1 within a documents folder at the file path "\Users\Rob\Documents\", agents discovered approximately 15 videos depicting child pornography.   The majority depicted prepubescent females between the approximate ages of 5-10 years old, and depicted penetration and other sexual acts, as well as masturbation.

14.    By way of example, some of the child pornography files recovered from SUBJECT DEVICE 1 included the following videos:

    a.    A video that is approximately 17 minutes and 3 seconds in length and depicts a prepubescent female minor, who appears to be approximately 7 to 9 years old, based upon the overall size of her body, and lack of pubic hair and breast

---

[3] I am aware that Telegram is an end-to-end communications application, Mega is a cloud-based file sharing application, and Veracrypt is a program that allows users to encrypt files, drives, or portions thereof.  I am aware that all three of these programs have been previously encountered in child exploitation investigations. Additionally, I am also aware that an encrypted volume is a section of the hard drive that is separated from the rest of the volume and would not be accessible to users without a password, passcode, or other decryption key. A user may utilize an encrypted volume to protect data and make it private so that others cannot view or have access to the data.

development.  The video begins with the prepubescent female standing on a bed, as she begins to remove her clothes.  The video continues to display the now fully nude prepubescent female inserting her own fingers into her anus with the camera focuses in closely and the pans back out. At one instance, an adult hand is seen rubbing the prepubescent female's buttocks.  At approximately 2 minutes and 58 seconds into the video a nude adult seen entering the scene, and begins to insert his penis to the prepubescent female's mouth.  The act continues on further into the video, and the prepubescent female is seen in different positions that further expose her vagina to the camera. Later in the video, the adult male is seen inserting his erect penis into the prepubescent female's anus.  The video continues, and the adult erect penis is seen being inserted into the prepubescent female's mouth again until the conclusion of the video;

b.   A video that is approximately 1 minute and 52 seconds in length, and depicts a nude prepubescent female minor, who appears to be approximately 6 to 8 years old, based upon overall size of her body, and lack of pubic hair and breast development. The camera is primarily focused in on the prepubescent female's genital area. Throughout the duration of the video, an adult erect penis is seen being repeatedly inserted into the prepubescent female's anus;

c.   A video that is approximately 1 hour 30 minutes and 50 seconds in length, and depicts two nude prepubescent females, who appear to be approximately 6 to 8 years old, based upon the overall size of their bodies, and the lack of pubic hair and breast development.  The prepubescent females are depicted in the video along with an adult male primarily in bedroom setting, but also in a bathroom at one point.

During the video, the adult male is seen inserting his erect penis to the mouths of both the prepubescent females, as well as touching their vaginas with his hands, objects, and his erect penis.  The video also depicts the adult male's hand spreading apart the prepubescent females' vaginas while focusing the camera in closely to that area.  The prepubescent females are also seen during the video running around and jumping on a bed in various states of nudity.  The video concludes with the camera focused in closely on the adult male's penis and one of the prepubescent female's vagina, and it appears that there is a white substance on the vagina.[4]

15. Forensic examination of the devices seized pursuant to the search warrants is ongoing.

## CONCLUSION

16. Based on the foregoing information, I respectfully submit that there is probable cause to believe

---

[4] I am aware that the "preferred practice" in the First Circuit is that a magistrate judge view images that agents believe constitute child pornography by virtue of their lascivious exhibition of a child's genitals. *United States v. Brunette*, 256 F.3d 14, 18-19 (1st Cir. 2001) (affiant's "legal conclusion parroting the statutory definition […] absent any descriptive support and without an independent review of the images" insufficient basis for determination of probable cause.). Here, however, the descriptions offered in paragraph 14 herein "convey to the magistrate more than [my] mere opinion that the imag[e] constitute[s] child pornography." United States v. Burdulis, 753 F. 3d 255, 261 (1st Cir. 2014) (distinguishing Brunette).  Per HSI, the children in this paragraph appear to be approximately 7-9  years old (paragraph 14(a)), and approximately 6-8  years old (paragraphs 14(b) and 14(c)), – all clearly younger than 18 – and each depicts a child engaged in sexual activity rather  than "merely" the lascivious display of her genitals. Furthermore, the descriptions of the files herein are sufficiently specific as to the ages and appearances of the alleged children as well as the nature of the sexual conduct pictured in each file, such that the Court need not view the files to find that they depict child pornography.  See United States v. Syphers, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice is for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images or provide a sufficiently specific description of the images to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added); see also United States v. LaFortune, 520 F.3d 50, 56 (1st Cir. 2008)(similarly emphasizing Syphers court's use of "or" in describing the Brunette "best practice").  Where I have included such nonconclusory, sufficiently specific descriptions, this Court need not view the imagery to find that they depict child pornography.  Nonetheless, the described imagery is available for review at the Court's request.

that that on or about May 3, 2023, MILLER knowingly possessed material that contained one or more images of child pornography, as defined in 18 U.S.C. § 2256(8), that involved a prepubescent minor and a minor who had not attained 12 years of age, and that had been mailed, and shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

*Kendra M. Miller /by Paul G. Levenson*
KENDRA M. MILLER
Special Agent
Homeland Security Investigations

Sworn telephonically before me in accordance with Fed. Rule Crim. P. 4.1 this 3rd day of May, 2023.

HONORABLE PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE

8